UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                          :

ALAN ARNOLD, Individually and ALAN     :
ARNOLD, d/b/a MCCAULEY TRUCKING   :
COMPANY,                                    :
                                            :
            Plaintiff,          :
                                            :       <u>MEMORANDUM AND ORDER</u>
   -against-                       :
                                            :       00-CV-4485 (CBA)
ANTHONY STORZ, DANIEL GALLO,      :
WILLIAM TURIS, HARVEY C. LUCKS and  :
JOHN M. ZAK, as Trustees and Fiduciaries of  :
the Local 807 Labor Management Health &  :
Pension Funds,                      :
                                            :
            Defendants.      :
-----------------------------------------------------------------x

AMON, UNITED STATES DISTRICT JUDGE:

## I.    <u>FACTUAL BACKGROUND</u>

From 1973 to 1998, Plaintiff Alan Arnold ("Arnold") was a self-employed truck driver

for McCauley Trucking Company ("McCauley").  Arnold Dep. at 11.  McCauley had no other

owners or employees.  <u>Id.</u>  In 1973 Arnold was told that he would have to become a member of

the Truck Drivers Local Union No. 807 ("the Local 807") to transport freight within New York.

Arnold did so and McCauley entered its first collective bargaining agreement ("CBA") with the

Local 807.  Arnold Dep. at 9-10.  According to the terms of that and subsequent CBAs, from

1973 to 2003 Arnold made contributions of specified amounts to the Local 807 Labor-

Management Health and Pension Fund ("the Fund") based on the number of hours worked by or

paid to employees who performed work covered by the CBA.  Arnold Aff. at 10-11, 12.

In 1981, following a dispute between McCauley and the Fund, an arbitrator ruled that

1

McCauley was required to make contributions for a minimum of 174 hours per month on Arnold's behalf, regardless of the actual hours worked, dating back to 1973. Arnold Aff. Ex. B. The arbitrator made this determination because Arnold's actual status was that of an owner-operator, not an employee. On May 20, 1981, the Supreme Court of the State of New York, Queens County confirmed and entered judgment on this award.

From 1973 to 1998, McCauley contributed $119,122.58 to the Fund on behalf of Arnold. Throughout these twenty five (25) years as a member of Local 807, Arnold received yearly updates from the Fund listing his total years of pension credit. Arnold Aff. at 37. As of January 31, 1998, Arnold had accrued twenty-four and one-half (24.5) years of pension credit.

In 1995 a payroll audit was performed by the Fund. Fernandez Dep. at 35. The report noted that McCauley was making contributions on behalf of its owner, Arnold, absent a participation agreement permitting owner/officer participation and recommended that the Fund investigate the matter. Fernandez Dep. at 35. On March 23, 1998, some three years later, the Fund informed Arnold that this "recent" audit revealed that Arnold was the only individual on behalf of whom McCauley was making contributions to the Fund and requested that Arnold indicate whether he was a shareholder/owner and/or officer of McCauley, and if so, the percentage of his interest in McCauley. Upon receipt of this letter, Arnold's wife spoke with counsel for the Fund and understood its position to be that Arnold was "not part of the Union." On April 10, 1998, Arnold's wife responded by letter to express her disbelief that the Fund would take this position just as her husband had turned age sixty (60) "and is almost ready to retire." On April 28, 1998, the Fund informed Arnold that he was not eligible to participate in the Plan, which excludes owners, officers and supervisors. Arnold Dep. Ex. I. The Fund stated

that Arnold's health and pension coverage would be terminated immediately and no further contributions accepted on his behalf.  Id.  Local 807 also informed Arnold that he was not an "employee" and so his membership was terminated.  Arnold Dep. Ex. J.  Arnold asked that this determination be reviewed, but the Fund maintained its position.  Arnold Aff. at 36.

## II.   PROCEDURAL BACKGROUND

Arnold brought this action seeking to recover the pension benefits he claims are due and owed to him by the Fund and declaratory relief directing the Fund to acknowledge and recognized that Arnold is eligible as a "participant" and "beneficiary" of the Fund pursuant to Sections 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), as amended 29 U.S.C. § 1132(a)(1)(B).  In the alternative, Arnold sought restitution of all contributions made to the Fund on his behalf.

The parties' cross-motions for summary judgment were referred to Magistrate Judge Lindsay.  This Court adopted the R&R to the extent that it found jurisdiction lacking because "the plan maintained by Arnold was not an employee benefit plan under ERISA as he did not establish the plan for the benefit of an employees."

Defendant appealed this order and the Second Circuit reversed and remanded.  Arnold v. Lucks, 392 F.3d 512, 519 (2d Cir. 2004).  The Second Circuit held that the proper inquiry is not Arnold's status as an employer or employee or sole proprietor, but instead the status of the Fund.  ERISA "shall apply to any *employee benefit plan* if it is established or maintained...by any *employee organization* or organizations representing employees engaged in commerce or in any industry or activity affecting commerce..."  29 U.S.C. § 1003(a).  An "employee benefit plan" is

defined at 29 U.S.C. 1002(3) as including "employee pension benefit plan[s]," and "employee

pension benefit plans" are defined at 29 U.S.C. 1002(2) as "any plan maintained by...an

employee organization...[that]( i) provides retirement income to employees, or (ii) results in

deferral of income by employees for periods extending to the termination of covered

employment or beyond..."  Finally, an "employee organization" is defined as including "any

labor union..."  29 U.S.C. § 1002(4).  Thus, the Fund, which provides retirement income or

income deferred beyond termination of employment and is maintained by a labor union (the

Local 807), is covered by ERISA.

Having thus concluded that the Fund is covered by ERISA, the Second Circuit held that

this Court has jurisdiction under ERISA and remanded the matter to this Court to determine

whether Arnold was improperly denied benefits under the Fund or, in the alternative, whether

Arnold is owed restitution of the amount he contributed to the Fund.  Arnold, 392 F.3d at 519.

Both parties filed Supplemental Memoranda of Law on remand.


**III.    ANALYSIS**

**A.    Denial of Benefits**

Jurisdiction having been established, this Court's inquiry is whether a question of fact

exists as to the Fund's denial of Arnold's eligibility.  Because 29 U.S.C. § 1132(a)(1)(B),

provides a right of action for employees to recover only those "benefits to which they are entitled

under the terms of an employee benefits plan," to adjudicate such a claim, "a court necessarily

must identify the terms of the plan."  Feifer v. Prudential Ins. Co. of Am., 306 F.3d 1202, 1208

(2d Cir. 2002).

1. <u>Denial of Benefits under ERISA</u>

When a denial of benefits is challenged under § 1132(a)(1)(B), a court must review the denial *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1987). If the plan reserves such discretionary authority, a court must review the decision under "the more deferential arbitrary and capricious standard." <u>Kinstler v. First Reliance Std. Life Ins. Co.</u>, 181 F.3d 243, 249 (2d Cir. 1999) (<u>citing</u> <u>Pagan v. NYNEX Pension Plan</u>, 52 F.3d 438, 442 (2d Cir. 1995)). As the Fund has clearly reserved - and has exercised - discretionary authority to determine eligibility, this Court must determine whether the decision that Arnold was ineligible was "without reason, unsupported by substantial evidence or erroneous as a matter of law." <u>Id.</u>

On a motion for summary judgment with regard to an ERISA- governed denial of benefits, the issue is "whether there is a material issue of fact in dispute regarding the factors considered by the administrator, and whether as a matter of law his or her decision based on those factors constitutes a clear error of judgment." <u>Wojciechowski v. Metro. Life Ins. Co.</u>, 1 Fed. Appx. 77, 79 (2d Cir. 2001) (<u>citing</u> <u>Smith v. Ameritech</u>, 129 F.3d 857, 864 (6th Cir. 1997). A plan should be reviewed "as a whole, giving terms their plain meanings." <u>Fay v. Oxford Health Plan</u>, 287 F.3d 96, 104 (2d Cir. 2002) (<u>citing</u> <u>Brass v. Am. Film Techs., Inc.</u>, 987 F.2d 142, 148 (2d Cir. 1993) ("Where the [contract] language is plain and unambiguous, a court may construe the contract and grant summary judgment."); <u>Bradwell v. GAF Corp.</u>, 954 F.2d 798, 800 (2d Cir. 1992) ("In construing the policy, we look to the language of the policy and other indicia of the intent of the policy's creator.")).

2. <u>The Fund</u>

Section 2.02 of the Fund's plan states that "[a]n Employee who is engaged in Covered Employment during the Contribution Period shall become a Participant in the Plan..."[1]  Ziskin Decl. Ex. D.  Section 1.08 defines an Employee as "a person who is an Employee of an Employer and who is covered by an Written Agreement requiring Employer contributions on his behalf...The term 'Employee' shall not include any self-employed person or sole proprietor of a business organization which is a Contributing Employer."  Id.  Thus, to be a Participant, one must be an Employee, and an Employee is defined to the exclusion of any self-employed person or sole proprietor.

In support of his argument that the Fund's denial of benefits was improper, Arnold cites to a number of cases decided before the recent Supreme Court decision in <u>Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon</u>, 541 U.S. 1 (2004).  <u>Yates</u> was decided after the present parties' first objections to the R&R were filed and after this Court's Order adopting the R&R, but before the Circuit Court's  decision.  Therefore, the parties have addressed the consequences of <u>Yates</u> in their Supplemental Memoranda of Law filed on remand.

Yates, a doctor, was the sole shareholder and president of a professional corporation which employed himself and one or more other employees.  The professional corporation maintained a profit sharing plan in which at least one person other than Yates or his wife was a participant.  <u>Yates</u>, 541 U.S. at 8.  The plan, referring to "employees,"  did not otherwise

---

[1]What constitutes "Covered Employment" and a "Contribution Period" is not at issue, nor is the remainder of this provision, which deals with prerequisite hours.

explicitly include or exclude any class as participants. The Supreme Court granted certiorari to resolve a split in the Circuits as to whether a working owner may qualify as a participant in an employee benefit plan covered by ERISA. Deciding that "a working owner can wear two hats, as an employer and employee," (Id. at 16) and that the U.S. Dept. of Labor had noted "a clear Congressional design to include 'working owners' within the definition of 'Participant' for purposes of Title I of ERISA," (Id. at 18) the Court held that working owners could qualify as employees.

However, Yates, like most of the cases Arnold cited in his objections,[2] dealt with a plan that was silent as to exclusions or inclusions; it merely guaranteed benefits to 'employees,' and the question presented was whether working owners could qualify as employees. This is of limited impact to the present facts, where there is an explicit exclusion of sole-proprietors and self-employed persons and Arnold is a member of one or both of those excluded classes. See Bronk v. Mountain States Tel. & Tel. Co., 140 F.3d 1335, 1338 (10th Cir. 1998) ("It is well established that ERISA does not prohibit an employer from distinguishing between groups or categories of employees, providing benefits for some but not for others.") (citing Shaw v. Delta Air Lines, 463 U.S. 85, 91 (1983) (ERISA "does not itself proscribe discrimination in the provision of employee benefits.")).

Moreover, this is not a situation where an issue of fact exists as to the proper

_____

[2] One exception is Reiherzer v. Shannon, 581 F.2d 1266 (7th Cir. 1978), where the court agreed that "the Plan, on its face, excludes time as 'self-employed' from being considered for purposes of calculating 'continuous service in the industry...'" Id. at 1272. However, the issue was whether the Trustees properly determined that a shareholder and corporate officer was "self-employed" under that plan. Thus, its holding has no impact on the issue here, that is, whether a sole-proprietor may participate in a plan that explicitly excludes sole-proprietors.

interpretation of the Fund because a conflict exits between the "plain meaning" and evidence of contrary intent.  See, e.g., Perreca v. Gluck, 295 F.3d 215, 224 (2d Cir. 2002); Thompson v. Gjivoje, 896 F.2d 716, 721 (2d Cir. 1990) ("Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate.").  The Fund language clearly excludes sole proprietors and the self-employed from the definition of employees, and clearly limits the class of participants to Employees and Pensioners.  As Arnold has proffered no evidence that the Fund intended anything other than to exclude sole proprietors and self-employed persons from the plan, the Fund did not act capriciously or arbitrarily in excluding Arnold as a sole proprietor or self-employed person.

**B.**     **Estoppel**

Arnold argues that even if the Fund's denial of benefits would be allowed under the terms of the plan, such a denial is barred by estoppel.

1.     Failure to Plead Estoppel

The Fund argues that Arnold failed to plead estoppel in his Complaint, and Judge Lindsay in her R&R also noted that she would have dismissed the estoppel claim on these grounds if she had not found that it failed on the merits as well.

A claim not raised in the complaint may not be raised for the first time in an opposition to a dispositive motion.  Bonnie & Co. Fashions v. Bankers Trust Co., 945 F. Supp. 693 (S.D.N.Y. 1996).  However, a complaint need not plead "the legal theory or theories and statutory basis

supporting [a] claim." <u>Marbury Mgmt., Inc. v. Kohn</u>, 629 F.2d 705, 712 n.4 (2d Cir. 1980)

(citations omitted), but only state "facts that can be construed as alleging the existence" of such

claims. <u>Beckman v. United States Postal Serv.</u>, 79 F. Supp. 2d 394, 406 (S.D.N.Y. 2000) (<u>citing</u>

<u>Coram Healthcare Corp. v. Cigna</u>, No. 00-2677, 2002 U.S. Dist. LEXIS 23307, 42-43 (S.D.N.Y.

July 23, 2002)). <u>See also</u> Fed. R. Civ. P. 8(a)(2) ("A pleading which sets forth a claim for relief

... shall contain ...a short and plain statement of the claim showing that the pleader is entitled to

relief."). "[A]t the very least, plaintiff must set forth facts that will allow each party to tailor its

discovery to prepare an appropriate defense." <u>Beckman</u>, 79 F. Supp. 2d at 407.

This requirement is meant to keep a plaintiff from bringing a claim at "the last minute" as

this would "inevitably prejudice the defendant," <u>id.</u>, especially where the moving party had no

opportunity to conduct discovery on the issue. <u>Greicus v. Liz Claiborne, Inc.</u>, 00-9518, 2002

U.S. Dist. LEXIS 2628, *9-10 (S.D.N.Y. Feb. 14, 2002) (<u>citing</u> <u>Bonnie</u>, 945 F. Supp. at 731).

However, there is no prejudice where the defendant was on notice as to the merits of the claims

and had an opportunity to fully brief and conduct discovery on the issue. <u>See</u> <u>also</u> <u>Bonnie</u>, 945

F. Supp. at 720 (noting the court takes a "dim view" of claims raised for the first time in

opposition to a dispositive motion, but considering the merits of the claim nonetheless).

Here, the Complaint did not specifically name a cause of action on the estoppel theory.

Each of the four causes of action was brought under § 1132(a)(1)(b), which provides a civil

action to "recover benefits due to him under the terms of the plan, or to clarify his rights to future

benefits under the terms of the plan." Arnold's First Cause of Action premised recovery on his

allegation that the Trustees' denial of benefits was arbitrary and capricious in violation of ERISA

because he should have been considered a qualified Fund participant under the actual terms of

the Fund plan and ERISA, § 28 U.S.C. 1002, et seq. Arnold's Third Cause of Action premised recovery on the allegation that the Trustees' denial of benefits was arbitrary and capricious in violation of ERISA because they had permitted and continued to permit similarly situated individuals to participate in and receive pension benefits from the Fund. Arnold's Fourth Cause of Action sought restitution under various ERISA provisions.

However, Arnold's Second Cause of Action premised recovery on the fact that the 1981 arbitration award required McCauley to pay 174 hours per month on Arnold's behalf. This cause of action was not premised on any provision of ERISA or the Plan, but instead requested, in the event the Court found that McCauley was required to make contributions to the Fund on Arnold's behalf, a declaration directing the Fund and Trustees "to acknowledge and recognize Arnold's eligibility pursuant to ERISA as a participant..." By premising recovery not on any provision of ERISA or the Fund plan, but on the Fund's prior actions taken to secure contributions from McCauley on Arnold's behalf, and further conditioning recovery on the Court's decision that those contributions were in fact owed, this cause of action could reasonably be read as claiming that the Fund should be estopped from denying Arnold was a participant because of the actions it had taken.

Moreover, this Court need not speculate as to whether this would be a reasonable reading of this cause of action because it appears to be how the Fund actually read it. Indeed, in its Answer, the Fund states as its Second Affirmative Defense, "Plaintiff can not recover in this matter by reason of the doctrine of estoppel." Answer. at 7. Further, both Arnold and the Fund conducted discovery on and extensively briefed the estoppel claim in their cross-motions for summary judgment, oppositions thereto, objections to the R&R, appellate briefs and

supplemental memoranda of law on remand.  The Fund cannot argue that the Complaint did not

put it on notice that an estoppel cause of action was being asserted as it explicitly asserted a

defense against such a cause of action in its Answer.  Nor can it argue that it was prejudiced as it

had ample opportunity and did in fact conduct discovery on and brief this cause of action so that

it could "prepare an appropriate defense."  Beckman, 79 F. Supp. 2d at 407.  As the record

demonstrates that the Fund was aware of the estoppel claim as early as its Answer and suffered

no prejudice from Arnold's failure to name it as such in his Complaint, the Court refuses to

dismiss this claim on these grounds.[3]


2.      Estoppel in ERISA Matters

It is well settled that "principles of estoppel can apply in ERISA cases under

extraordinary circumstances." Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993).  Courts in

this circuit have tended to find "extraordinary circumstances" where an employer induced an

employee to take some action that benefitted the employer by offering benefits to the employee

which were later reneged.  For example, in Schonholz v. Long Island Jewish Medical Ctr., 87

---

[3] Further, were this Court to disregard this evidence of lack of prejudice and dismiss the estoppel claim on grounds that Arnold failed to plead it, Arnold would inevitably move to amend the complaint to conform it with the facts so as to assert the estoppel claim.  This would be waste of judicial resources.  In Mancuso v. Consolidated Edison Co., 905 F. Supp. 1251, 1258 (S.D.N.Y. 1995) aff'd in part, vacated in part at 216 F.3d 1072 (2d Cir. 2000), the Southern District allowed an equitable estoppel claim to proceed even though it had not been plead, noting that "if we were to reject plaintiffs' equitable estoppel argument on this basis, we would nonetheless grant leave to amend the complaint to encompass plaintiffs' factual assertions on this issue.  We would then be faced with addressing the merits of plaintiffs' argument.  This course of action is needlessly formalistic and time-consuming.  Accordingly, we will address the merits of plaintiffs' equitable estoppel argument as if that claim had been properly plead."  This Court's analysis would not be different.

F.3d 72 (2d Cir. 1996), the president of a hospital asked plaintiff, the COO, to resign.  The

plaintiff agreed and subsequently received a letter requesting her resignation and stating that she

would receive certain severance benefits.  Id. at 74.  Plaintiff replied with a letter of resignation.

The board of the hospital subsequently decided that the president did not have the authority to

offer the severance benefits and voted to revoke the benefits.  Id.  Under these circumstances the

Second Circuit refused to grant summary judgment against the plaintiff's estoppel claim and

remanded.  See also, Calogera Abbruscato v. Empire Blue Cross & Blue Shield, 274 F.3d 90,

101 (2d Cir. 2001) (finding "extraordinary circumstances" where employees were induced to

retire by promises of benefits that were later denied).

     While some courts have read Schonholz and other case law as requiring that the benefits

be offered as an intentional inducement (see, e.g., Hart v. Equitable Life Assur. Soc., No. 02-

2364, 2002 U.S. Dist. LEXIS 22928 (S.D.N.Y. Nov. 26, 2002) (finding no "extraordinary

circumstances" where the plan had mistakenly miscalculated the promised benefits because there

was no intentional inducement)), the Second Circuit Court of Appeals recently reiterated that a

showing of intentional (or fraudulent) inducement is not the only way "extraordinary

circumstances" may be found in this circuit.  In Devlin v. Empire Blue Cross & Blue Shield, 274

F.3d 76 (2d Cir. 2001) (Devlin II) and the court's prior decision in the same matter, Devlin v.

Transportation Communs. Int'l Union, 173 F.3d 94, 102 (2d Cir. 1999) (Devlin I), the court

noted that "the remarkable consideration in Schonholz was the defendants' use of promised

severance benefits as an inducement to persuade Shonholz to retire" and that, since the Devlin

plaintiff had demonstrated a similar inducement, it "need not decide whether extraordinary

circumstances other than intentional inducement would suffice."  Devlin II, 274 F.3d at 86.

However, several courts in the circuit have recognized "extraordinary circumstances" absent intentional inducement where an employer promised benefits to an employee in good faith in an intentional effort to induce the employee to take some action, and the employer later reneged on its promise. Bouboulis v. Transp. Workers Union, Local 100, No. 03-0373, 2004 U.S. Dist. LEXIS 12906 (S.D.N.Y. July 7, 2004). See also Karl v. Asarco Inc., No. 02-5565, 2004 U.S. Dist. LEXIS 25956 (S.D.N.Y. Dec. 22, 2004) ("the list of extraordinary circumstances, however, is not necessarily limited to those situations addressed in existing case law."); Hart, 2002 U.S. Dist. LEXIS 22928, at *13 (noting that "the Second Circuit in the most recent Devlin case made it clear that "extraordinary circumstances" are not limited to circumstances of intentional inducement).

In those case where "extraordinary circumstances" were found, plaintiffs had alleged facts which suggested that "the surrounding circumstances [we]re indeed beyond the ordinary." Aramony, 191 F.3d at 152. The facts demonstrating "extraordinary circumstances" must go beyond a simple showing of reliance on a promise, harm and injustice, as would be required of any estoppel claim. Devlin II, 274 F.3d at 85-87. For example, courts have looked for any "remarkable consideration" that the employer might have derived. Devlin I, 173 F.3d at 102. In Straus v. Prudential Empl. Sav. Plan, 253 F. Supp. 2d 438, 452 (S.D.N.Y. 2003), the court refused to find "extraordinary circumstances" where the plaintiffs made no allegation that "defendant received any 'remarkable consideration' such as resignation of employment or foregone salaries in return for their reliance." The court contrasted the facts in front of it with those in Hart, 2002 U.S. Dist. LEXIS 22928, where the plaintiff was given inflated estimates of her retirement income by defendant's employees which were later reduced after the mistake in

calculation was discovered. The <u>Straus</u> court found that the defendant there, as the defendant in <u>Hart</u>, had "little to gain from the promise it made to plaintiffs; the perceived promise stemmed largely from defendant's mistake and misinformation." <u>Straus</u>, 253 F.3d at 453.

Similarly, where there were no allegations of intentional inducement, but where an employer "acted recklessly because it intentionally provided estimates to induce reliance, those estimates were grossly inflated, and with greater attentiveness or care in producing the estimates, such errors could have easily been avoided," the court found "extraordinary circumstances" to support estoppel. <u>DePace v. Matsushita Elec. Corp. of Am.</u>, 257 F. Supp. 2d 543, 554 (E.D.N.Y. 2003); <u>DePace v. Matsushita Elec. Corp. of Am.</u>, No. 02-4312, 2004 U.S. Dist. LEXIS 13316, at *37-38 (E.D.N.Y. July 16, 2004).

Finally, courts in this Circuit have found "extraordinary circumstances" even where an employer promised benefits to an employee in good faith. <u>Bouboulis</u>, 2004 U.S. Dist. LEXIS 12906, at *7. Other courts have held that a good faith promise of benefits used to induce action will support a finding of 'extraordinary circumstances' if, "once such action is taken in reliance, the promisor reneges." <u>Pronti v. CNA Fin. Corp.</u>, 353 F. Supp. 2d 320, 326 (N.D.N.Y. 2005) (<u>citing</u> <u>Bouboulis</u>, 2004 U.S. Dist. LEXIS 12906, at *7).

This latter line of cases also finds support in the original purpose of limiting equitable estoppel claims in ERISA matters to "extraordinary circumstances," which was to protect the "actuarial soundness" of a pension fund. <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 772 F.2d 1032, 1041 (2d Cir. 1985) (<u>citing</u> <u>Chamberlin v. Bakery & Confectionery Union Pension Fund</u>, 99 L.R.R.M. 3176 (N.D. Cal. 1977). Specifically, the Second Circuit held that because "the actuarial soundness of pension funds is, absent extraordinary circumstances, too

important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan, courts have been reluctant to apply the estoppel doctrine to require the payment of pension funds." <u>Chambless</u>, 772 F.2d at 1041 (internal quotation marks and citations omitted). In <u>Chambless</u>, the Second Circuit also adopted the holding of the District Court for the Northern District of California that "To permit a single oral statement by a union business agent to obligate the trust to provide benefits to persons not otherwise entitled to them would seriously erode the requirement that the fund be administered by representatives of both the employer and the employees solely for the benefit of employees of the contributing employer. 29 U.S.C. § 186(c)(5). Any such erosion can create a loophole that would enable the unscrupulous to divert funds away from the proper parties. . . ." <u>Id.</u> at 1041 (<u>quoting</u> <u>Chamberlin v. Bakery & Confectionery Union Pension Fund</u>, 99 L.R.R.M. 3176 (N.D. Cal. 1977).

Thus, courts in more recent decisions have remembered that the purpose of requiring "extraordinary circumstances" is to "lessen the danger that commonplace communications from employer to employee will routinely be claimed to give rise to employees' rights beyond those contained in formal benefit plans." <u>Aramony v. United Way Replacement Benefit Plan</u>, 191 F.3d 140, 151 (2d Cir. 1999) (<u>rvs'd on other grounds</u>) (<u>citing</u> <u>Devlin I,</u> 173 F.3d at 102). Where the claim is the result of a sustained and official pattern of communication (including litigation initiated by the Fund), and there are assurances that the actuarial soundness of the fund is not in jeopardy, the principles and policies underlying the need to restrict estoppel claims in the ERISA are inapplicable.[4]

---

[4]The Fund also argues that this Court may not consider the estoppel claim because ERISA does not authorize equitable relief "at large," but only "appropriate equitable relief for

3.      Plaintiff's Claim

A plaintiff must satisfy four elements to succeed on a claim of promissory estoppel: (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced.  Devlin II, 274 F.3d at 85-86.  The record is clear that Arnold received yearly updates from the Fund listing his total years of pension credit (Arnold Aff. at 37) and was otherwise informed that he was a participant in the Fund and could expect that he would receive the full benefits of a Participant.  The Fund's suit and the arbitration award against Arnold requiring he contribute more money to the Fund each month constituted promises that Arnold was in fact a participant in the Fund and that he would enjoy the benefits derived therefrom; indeed, there is no other reason these contributions would be made.  While the record does not reflect whether Arnold made other pension or healthcare arrangements, it is logical to find that he nonetheless expected to receive the benefits afforded to Fund Participants.  Likewise, the Fund's failure to award those benefits to Arnold has caused him injury in the amount he paid into the Fund, and possibly additional costs incurred by him as a result.[5]  The first three prongs of an equitable estoppel claim are thereby satisfied.

---

the purpose of redressing any violations or enforcing any provisions of ERISA or an ERISA plan."  Mertens v. Hewitt Assocs., 508 U.S. 248, 253 (U.S. 1993).  However, Mertens merely clarified that only traditional equitable remedies, such as restitution and injunction, are authorized by § 502(a)(3), and not monetary damages, "the classic form of legal relief."  Id. at 255 (emphasis in the original).  Neither Mertens nor the other case law the Fund cites calls into doubt that courts may estop a fund from denying benefits where the traditional test for estoppel is met and "extraordinary circumstances" are found.

[5]The issue of damages has not been briefed by the parties and Arnold refused to answer questions regarding damages in his deposition.  Arnold Dep. (March 1, 2001) at 35:23-36:21.

It is also true that injustice will result if the promise is not enforced.  If Arnold was held to be ineligible and denied restitution of the amount paid in dues, this would be patently unjust, tantamount to "thievery," in Judge Miner's words.  Transcript of Oral Argument at 26:25-27:1, Arnold, 392 F.3d 512 (No. 04-0313-cv).  Further, at this point restitution of the amount paid in dues, even with interest, will not make Arnold whole as it would not remedy the costs of providing for his own health care.  Therefore, refusal to enforce the promise would result in injustice and so the fourth prong is met.

As to whether "extraordinary circumstances" exist, the Fund has received "remarkable consideration" in the form of the $119,122.58 in contributions.  Straus, 253 F. Supp. 2d at 452.  Likewise, the Fund "acted recklessly" by proceeding for over twenty five years on the basis that Arnold was a qualified participant.  DePace, 257 F. Supp. 2d at 554.  Without question, with "attentiveness or care" the Fund could have identified that Arnold fit within the exceptions to the Fund at some point during the twenty five years he contributed to it.  Id.

Moreover, what truly constitutes the "extraordinary circumstances" that set this case apart from other estoppel claims is not just the twenty five years for which the Fund failed to detect its error, but the fact that eight years into Arnold's participation (and some seventeen years before it decided that he was ineligible) the Fund went so far as to procure an arbitration award requiring McCauley to pay additional amounts in dues on Arnold's behalf  to the Fund.  The award declared that Arnold was in fact an owner-operator and employer, and so was required to contribute on the basis of a minimum of one hundred and seventy four hours per month regardless of the actual hours worked.

If the Fund was to take the position that owner-operators could not qualify as Plan participants, they could and should have raised it then. The Arbitrator noted that "Alan Arnold is an individual who does work under the name McCauley Trucking," that "McCauley Trucking is just a fiction" and that "He is an employer. He employs himself." Arnold Aff. Ex. B. The Fund's Petition to the Supreme Court of New York, County of Queens, requesting a judgment confirming the arbitration award, noted that, "The Union complained that McCauley had failed to abide by its obligations under the [CBA] to wit, McCauley failed and refused to make the required contributions to the Funds on behalf of covered employees." Arnold Decl. Ex. C (emphasis added). Thus, the Fund proceeded to consider McCauley the employer or owner-operator which employed one or more "covered employees." As Arnold was the only employee, the Fund considered him to be covered. That the terms of the CBA allowed the Fund to exclude Arnold as sole proprietor or self-employed does not explain why it consistently considered Arnold an employee and/or an owner-operator (long before Yates made clear that owner-operators could be considered employees absent explicit exclusions).

It should also be noted that the Plan states in its Supplemental Memorandum of Law on Remand that the 1981 arbitration award "assure[d] that [Arnold]…would fairly contribute more than the minimum hours of contributions and thus maintain the financial soundness of the plan." Brief at 5. This concession confirms that this is not a situation where the "actuarial soundness" of the fund is in jeopardy. Chambless v. Masters, Mates & Pilots Pension Plan, 772 F.2d 1032, 1041 (2d Cir. 1985). Indeed, were Arnold excluded but his contributions kept, the result would be a surplus to the Fund.

Finally, in a prepared summary of the review of its denial of Arnold's benefits, the Fund itself admitted that Arnold's case presented "extraordinary circumstances." Defendant's Reply Brief in Support of Notice of Motion for Summary Judgment and in Opposition to Plaintiff's Notice of Motion for Summary Judgment, Ex.A.

In sum, Arnold has met the four prong test for estoppel, and has further shown that extraordinary circumstances exist such that the Fund must be estopped from denying the benefits it owes to him. Like all cases where "extraordinary circumstances" have been found, the Fund must be estopped from denying the benefits it promised and on which Arnold relied. Arnold should also be awarded the interest that accrued on those delayed benefits under § 502(a)(3)(B). Dunnigan v. Metro. Life Ins. Co., 277 F.3d 223, 230 (2d Cir. 2002).


## C.    Restitution

Under 29 U.S.C. § 1103(c)(2)(A)(ii), an employer may seek the return of a contribution made "by mistake of fact or law" to a multi-employer plan "within six months after the plan administrator determines that the contribution was made by mistake of fact or law." Frank L. Ciminelli Constr. Co. v. Buffalo Laborers Supplemental Unemployment Ben. Fund, 976 F.2d 834, 835 (2d Cir. 1992). Once that six month period has expired, a claimant must show that the refusal to repay was "arbitrary or capricious and the equities favor restitution." Dumac Forestry Services, Inc. v. International Brotherhood of Electrical Workers, 814 F.2d 79, 82-83 (2d Cir. 1987). The only justification the Fund has offered for denying restitution is that Arnold did not seek restitution until nearly two and a half years after the initial termination.

Even under the arbitrary and capricious review which would apply outside the six month period, the Plan's refusal to refund Arnold's contributions is without any basis. The fact that Arnold refused to accept a settlement offer in the amount of his contributions does not weigh against him in considering the "balance of equities." Here, the Fund "wrongfully secured a benefit" or at best "received one which it would be unconscionable for [it] to retain." Geller v. County Line Auto Sales, No. 94-3123, 1995 U.S. Dist. LEXIS 8629, at *11, 1995 WL 313123, at *4 (E.D.N.Y. May 17, 1995). It would be "against equity and good conscience to permit the defendant to retain what is sought to be recovered." Geller v. County Line Auto Sales, 86 F.3d 18, 22 (2d Cir. 1996) (quoting Paramount Film Distrib. Corp. v. State, 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 393, 285 N.E.2d 695 (1972)).

Had the Court held that the Fund was not estopped from denying the pension benefits owed to Arnold, it would have ordered restitution. However, Arnold is obviously not owed both forms of relief and has succeeded in his estoppel claim and therefore restitution is not ordered.

IV.    **Conclusion**

Arnold has satisfied the requirements for his claim of equitable estoppel. In addition, his case presents "extraordinary circumstances." Twenty five years ago the Local 807 approached Arnold and forced him to join and begin making substantial contributions to its Fund if he wanted to transport cargo in New York. Eight years later the Local 807's Fund audited and sued Arnold to force him to pay even more money into the Fund, based on his status as an owner-operator. Seventeen years later, after twenty five years of paying contributions, just as Arnold reached retirement age, the Fund told him that he was not eligible to collect his benefits from the

Fund because of that very same status. Under such "extraordinary circumstances" the Fund must be estopped from denying benefits to Arnold.

For the reasons stated herein, and in light of this Court's "wide discretion in fashioning equitable relief to protect the rights of pension fund beneficiaries," <u>Katsaros v. Cody</u>, 744 F.2d 270, 281 (2d Cir. 1984), the Fund's Motion for Summary Judgment is denied and Arnold's Motion for Summary Judgment is granted as to his estoppel claim and denied as to his restitution claim. The Fund is ordered to reinstate Arnold as a Participant in the Fund and pay to him all benefits owed. The Fund is further ordered to pay to Arnold all interest owed under § 502(a)(3)(B) on all delayed benefits. The parties are ordered to submit to this Court, within 30 days of this Order, a joint plan detailing the amounts to be paid, including reliance damages, and arrangements to be made to reinstate Arnold as a plan Participant.

SO ORDERED.

Dated:  Brooklyn, New York
    September 30, 2005

          Carol Bagley Amon
          United States District Judge